Estate of Harold Chester Wright, Deceased, Anna Ruth Wright, Executrix, and Anna Ruth Wright v. Commissioner.
Estate of Wright v. Commissioner
Docket No. 73885.
United States Tax Court
T.C. Memo 1960-156; 1960 Tax Ct. Memo LEXIS 134; 19 T.C.M. (CCH) 822; T.C.M. (RIA) 60156; July 19, 1960
*134 Pension received by petitioner's decedent from Civil Service Employees' Pension Fund of the City of Nashville for physical incapacity to discharge his duties, not due to accidental injury suffered in the course of his employment, held, exempt from tax as amounts received through health insurance under section 22(b)(5), I.R.C. 1939. Quentin L. Housholder, Esq., for the petitioners. Lester R. Uretz, Esq., for the respondent. DRENNEN
Memorandum Opinion DRENNEN, Judge: Respondent determined a deficiency in petitioners' income tax, and additions to tax under sections 294(d)(1)(A) and 294(d)(2), I.R.C. 1939, for the calendar year 1953 in the amounts of $405, $31.64, and $21.09, respectively. The only issue is whether payments in the amount of $2,385 received in 1953 by decedent Harold Chester Wright from the Civil Service Employees' Pension Fund of the City of Nashville, Tennessee were exempt from tax under section 22(b)(5) of the 1939 Code. Respondent concedes that there is no addition to tax under section 294(d)(2) and it is agreed that the addition to tax under section 294(d)(1)(A) will be determined by our decision on the principal issue. All of the facts *135 were stipulated and the stipulation of facts, together with the exhibits attached thereto, is adopted as our findings of fact. The facts may be summarized as follows. Petitioner Anna Ruth Wright is an individual residing in Nashville, Tennessee. She filed a joint Federal income tax return for the calendar year 1953 with her husband, Harold Chester Wright, who died in 1959, presumably with the district director of internal revenue for the district of Tennessee. Harold Chester Wright (hereafter referred to as decedent) was employed by the City of Nashville from September 17, 1921, until May 16, 1951, at which time he applied for a pension from the City. The pension applied for was "Disability Pension (10 years or more at 50% of pay)" and the application stated the reason therefor as "Heart Disease and Sugar Diabetes". The application was approved by the Civil Service Commission of Nashville (hereafter referred to as the Commission) on May 28, 1951, effective May 16, 1951. The pension payments made to decedent were paid under the provisions of article 48 of the Charter of the City of Nashville. No payments or benefits under the City of Nashville pension plan have any connection *136 with the workmen's compensation law, nor is there any plan or agreement which is a contract of insurance, the entire pension plan being contained in the city charter which is a private act of the State legislature. Pertinent parts of article 48 are as follows. Section 228 provides for a Civil Service Employees' Pension Fund which shall service the pensions to be paid to all regular employees in classified service other than firemen, policemen, and teachers covered by their own funds. The monies for this fund are to be derived from 5 per cent of the salary of covered employees plus annual appropriations made by the mayor and city council based on the assessed value of taxable property in the city and other sources, with minimum and maximum limits. Covered employees are required to contribute for 25 years, and if an employee is pensioned prior to having so contributed, further contributions are deducted from his pension payments. Section 230 provides that an employee who has served as an employee for 25 years and is 60 years old, or who has served 30 years, is entitled to be retired without recall on a pension of 50 per cent of his salary at that time, payable for life. If the *137 Commission determines that an employee "is no longer able to efficiently discharge the duties of his position because of physical or mental infirmities, not due to accidental injury suffered in the course of employment," he may retire on a pension equal to a percentage of his current salary determined by his years of service, the maximum being 50 per cent after 10 years or more of service. Decedent applied for and was granted a pension under this provision. If the Commission determines that an employee "is no longer able to efficiently discharge the duties of his position because of permanent disability due to accidental injury suffered in the course of employment," such employee, without regard to length of service, shall be retired on a pension equal to 50 per cent of his current salary. The pensions for physical or mental infirmities or accidental injury suffered in the course of employment continue as long as the person is unable to resume work in the classified service, and such person may accept other jobs for compensation without loss of the pension payments, except that he may be recalled to work in the classified service upon examination and determination by the Commission *138 that he is able to resume active work in the classified service. The plan also provides that an employee temporarily disabled due to accidental injury suffered in the course of employment shall continue to draw full salary during the time he is laid off on account of such injury. "Section 236 provides in part: "The provisions of this Article do not create any form of insurance, and no rights or claims to refund account shall inure to any regular employee for any payment or payments made into the pension fund in the event of the death, resignation, pension, or discharge of any such employee. * * *" At the time of his disability retirement decedent had contributed $1,295.15 to the pension fund. He received pension payments of $220.83 per month, less $22.08 deducted for contributions to the fund, or a total of $2,385 per year net, from September 17, 1951, [1] until his death in July 1959. On September 16, 1951, decedent would have been eligible for a 30-year-service pension in the same amount as his disability pension. During the calendar year 1953, decedent received pension payments in the net amount of $2,385 which were not included in taxable income on his joint income tax return. *139 On June 13, 1956, the Civil Service Commission of the City of Nashville held a meeting and the following is an excerpt from the minutes of that meeting: "Harold C. Wright, pensioner from the Department of Aviation, was present with his Attorney, Richard H. Frank, Jr., to request the Commission to reconsider his pension status, and rule that his disability was caused by his duties while employed at the Department of Aviation. Medical statements were presented supporting this claim. Mr. Frank stated that at the time the pension was granted, May 16, 1951, Mr. Wright did not seek a determination of the line of duty status since pension benefits were the same, but it now develops that it will be to his advantage to have said pension based on disability arising as a result of his duties. After consideration, the Commission unanimously granted his request." Petitioners claim that the $2,385 pension payments received by decedent during the year 1953 are exempt from tax under section 22(b)(5), I.R.C. 1939, [2] either as amounts received under workmen's compensation *140 acts as compensation for personal injuries or sickness or, in the alternative, as amounts received through health insurance. Our conclusion that the payments received by decedent qualify as amounts received as health insurance under section 22(b)(5) makes unnecessary consideration of whether they qualify as amounts received under workmen's compensation acts. There is no question that decedent was retired on May 16, 1951, under the disability provision of the Nashville pension plan and that the payments he received *141 in 1953 were paid under that provision; and this is not changed by the fact that he would have been eligible for the same amount of pension for retirement after 30 years' service in September of 1951. Following the Supreme Court decision in Haynes v. United States, 353 U.S. 81, the United States Court of Appeals for the Third Circuit, in Kuhn v. United States, 258 F. 2d 840, and this Court in J. Wesley Sibole, 28 T.C. 40 (acq., I.R.B. 1960-20, 7), and Charles J. Jackson, 28 T.C. 36 (acq., 1957-1 C.B. 4), held that payments received under noninsured retirement plans for nonoccupational disability of uncertain or permanent duration qualify as amounts received as accident or health insurance under section 22(b)(5). Those cases are indistinguishable in any material respect from this case and compel the conclusion that the payments received by decedent here involved are exempt from tax as amounts received as health insurance under section 22(b)(5). Both the Sibole and Jackson cases have been acquieseced in by respondent. See also Rev. Rul. 58-90, 1958-1 C.B. 88, and Adam S. H. Trappey, 34 T.C. - (June 6, 1960), *142 which was decided under the 1954 Code but is nevertheless applicable. Respondent's only real effort to distinguish the above cases is that section 236 of article 48 of the Nashville Charter, the pertinent part of which is quoted above, specifically states that the provisions of this article do not create any form of insurance, and therefore these payments could not be amounts received as health insurance. This statement would not be controlling if the payments received qualify as health insurance under the Haynes case, and furthermore, it seems clear from the provision read as a whole that the word "insurance" was used in the sense of "guaranty", to make clear that no employee had a right to a return of his contributions in the event he died or his right to receive payments was otherwise terminated before he had received an amount equal to his contributions. Decision will be entered for the petitioners. Footnotes
1. The stipulation uses this date but it is also stipulated that the disability pension was made effective May 16, 1951.↩
2. SEC. 22. GROSS INCOME. (b) Exclusions from Gross Income. - * * *
(5) Compensation for injuries or sickness. - Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 23(x) in any prior taxable year, amounts received through accident or health insurance or under workmen's compensation acts, as compensation for personal injuries or sickness, plus the amount of any damages received whether by suit or agreement on account of such injuries or sickness, and amounts received as pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country;↩