JIMMY D. CASH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cash v. Commissioner
Docket No. 9843-93
United States Tax Court
T.C. Memo 1994-166; 1994 Tax Ct. Memo LEXIS 167; 67 T.C.M. (CCH) 2699; April 18, 1994, Filed *167 Decision will be entered for respondent except for the section 6651(a)(1) addition to tax. For petitioner: Leroy Boyer. For respondent: Edith F. Moates. DINAN
DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioner's 1990 Federal income tax in the amount of $ 2,411 and additions to tax under section 6651(a) and section 6654(a) in the amounts of $ 602.75 and $ 158.55, respectively. The issues for decision are: (1) Whether petitioner may exclude from gross income disability payments; (2) whether petitioner is liable for the section 6651(a) addition to tax for failure to timely file; and (3) whether petitioner is liable for the section 6654(a) addition to tax for failure *168 to make estimated tax payments. [2]
Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioner resided in Rush Springs, Oklahoma, at the time the petition was filed in this case. Petitioner did not file a Federal income tax return for the year 1990. Petitioner is a 60-year-old totally and permanently disabled former oil-rig worker. Petitioner began work as a tool-pusher rig supervisor for the Project 5 Drilling Company in December of 1981. Petitioner, as an employee of Project 5 Drilling Company, was covered by a long-term disability policy (the policy) with the *169 Unionmutual Stock Life Insurance Company of America (UNUM). Under the policy, an employee is determined to be permanently disabled when the employee is completely unable to perform material duties of his regular operation, and after 24 months of such disability, the employee is unable to perform material duties of any gainful occupation for which he is qualified. Once an employee is determined to be permanently disabled, the employee receives payments based on his level of compensation at the time the disability was suffered, reduced by the receipt of other benefits that he is entitled to as a result of the disability; i.e., workers compensation. In 1981, petitioner suffered a cerebrovascular hemorrhage with hemiplegia, commonly known as a "stroke". At the time petitioner suffered the stroke, although he was on "call" for work, he was at home walking across his yard. Petitioner did not seek medical attention until sometime later because he stated he was "bull headed". As a result of the stroke, Dr. Shanhall, a local neurologist, determined petitioner was totally and permanently disabled. Shortly thereafter, petitioner began receiving monthly disability payments pursuant to the *170 policy. Under the policy, petitioner was entitled to receive monthly payments until the age of 65. Petitioner received monthly disability payments until December 31, 1992, when petitioner accepted a $ 67,000 lump-sum settlement from UNUM in lieu of any future payments. Petitioner filed a Federal income tax return for the year 1981, but did not include the disability payments in his gross income. Petitioner did not file Federal income tax returns for the years 1982 through 1987. In 1989, after being advised that the disability payments were taxable, petitioner filed a Federal income tax return for the year 1988 and included the disability payments in gross income. Petitioner attached a Form W-2 received from UNUM to his 1988 return. On the Form W-2, the disability payments were reported under Block 10 entitled "Wages, tips, other compensation". Under Block 16, entitled "SICK PAY - NON-TAXABLE", the Form W-2 reported no payments received. In 1990, petitioner hired Doris Richardson, a certified public accountant in Chickasha, Oklahoma, to prepare his 1989 Federal income tax return. After consulting with a person petitioner believed was a representative of the IRS, Ms. Richardson *171 advised petitioner that his payments were not includable in gross income, and therefore no return was required to be filed. Based on Ms. Richardson's advice, petitioner did not file a tax return for the year 1989, or thereafter. During the year 1990, petitioner received payments totaling $ 20,305 from UNUM. Petitioner also received $ 8,996 in Social Security disability benefits and $ 780 from the Housing Authority of the Chickasaw Nation. Respondent determined in her notice of deficiency that the disability payments from UNUM to petitioner constituted taxable income. It is petitioner's contention that the disability payments are not taxable income because they are damages received on account of personal injuries or sickness under section 104(a)(2), or are amounts received through health insurance for personal injuries or sickness under section 104(a)(3). Alternatively, petitioner contends that the payments are not taxable under section 105(c) because they constitute payments for the permanent loss or loss of the use of a member or function of the body, and the payments were computed with reference to the injury and without regard to the period petitioner was absent from work. *172 [3] For convenience, we will address each issue separately. Respondent's determinations in the statutory notice of deficiency are presumed to be correct, and the taxpayer has the burden of proving otherwise. Rule 142(a); Helvering v. Taylor, 293 U.S. 507 (1935); Welch v. Helvering, 290 U.S. 111 (1933). Section 61 provides that gross income includes "all income from whatever source derived". However, section 104(a)(2) states that gross income does not include the "amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". The term "damages received" on account of personal injuries or sickness means an amount received through prosecution of a legal suit or action based upon tort or tort-type rights, or through *173 a settlement agreement entered into in lieu of prosecution. United States v. Burke, 504 U.S.    , 112 S.Ct. 1867, 1870 (1992); Horton v. Commissioner, 100 T.C. 93, 97 (1993); sec. 1.104-1(c), Income Tax Regs.
Where there is a settlement agreement, we look to the nature of the claim underlying the payment to the taxpayer, rather than the validity of the claim, to determine whether payments are on account of a tort-like personal injury. United States v. Burke, 504 U.S. at    , 112 S.Ct. at 1872. Such a determination is factual and is generally made by reference to the settlement agreement. Stocks v. Commissioner, 98 T.C. 1, 10 (1992). The most important factor in determining an exclusion under section 104(a)(2) is the "intent of the payor" as to the purpose in making the settlement. Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Stocks v. Commissioner, supra at 10. Petitioner contends that the payments were received in lieu of prosecution of *174 a legal action based upon tort -- what legal action based upon tort the payments were received in lieu of, petitioner never states. Specifically, petitioner points to the settlement agreement signed in 1992, and contends that when petitioner suffered a stroke, while he may have been in the yard of his home, he was on "call". We have thoroughly examined the single-page settlement and release document, and we find no basis for determining that it is anything more than a settlement and release of UNUM's financial obligation under the policy. Furthermore, we cannot agree that because petitioner was on call when he suffered a stroke, which left him permanently and totally disabled, we should automatically conclude without more that petitioner's disability payments were made in lieu of a legal action based upon tort. Based on the record, we find petitioner received long-term disability payments in accordance with the disability policy of his employer. Petitioner also contends that the payments are excluded from gross income under section 104(a)(3). Section 104(a)(3) excludes from gross income amounts received through accident or health insurance for personal injuries or sickness (other *175 than amounts received by an employee, to the extent that such amounts are attributable to contributions by the employer that were not includable in the gross income of the employee, or are paid by the employer). As applicable here, section 104(a)(3) applies to amounts received by an employee for personal injuries or sickness from a fund that is exclusively maintained by employee contributions. Trappey v. Commissioner, 34 T.C. 407, 408 (1960); sec. 1.104-1(d), Income Tax Regs.
Petitioner bases his contention solely on a vague recollection that the insurance premiums were deducted from his wages, yet were included in his gross income. Petitioner does not have any documentary evidence supporting his recollection. Petitioner does not have a Form W-2 from his employment at the Project 5 Company, and the company has long since ceased doing business. Moreover, petitioner's vague recollection is contradicted by the unambiguous statement found in the disability policy that states in pertinent part as follows: SUMMARY PLAN DESCRIPTION INFORMATION * * * 7. Contributions PROJECT FIVE & AFFILIATES, INC. pay the full cost of employee coverage under *176 the Plan.
* * * Based on the record, we find that petitioner's employer, the Project 5 Company, paid his entire disability-insurance premiums, and, thus, section 104(a)(3) is inapplicable. Having concluded that petitioner's disability payments are not entitled to an exemption under section 104(a)(2) or (3), we turn to petitioner's argument regarding an exemption under section 105. Section 105(a) generally provides that amounts received by an employee under accident health plans funded by an employer are included in the employee's gross income. However, an exception to the general rule is found under section 105(c), which states as follows: (c) Payments Unrelated to Absence From Work. -- Gross income does not include amounts referred to in subsection (a) to the extent such amounts -- (1) constitute payments for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer * * * and (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.
In order for disability payments to be qualify for exclusion under subsection (c), the payments must vary *177 to reflect the particular loss of bodily function. Hines v. Commissioner, 72 T.C. 715, 720 (1979); Estate of Olsen v. Commissioner, T.C. Memo. 1989-50. Payments vary according to the nature of the injury only when such payments are calculated with regard to the type and severity of the injury, and not merely the resulting disability. Rosen v. United States, 829 F.2d 506, 510 (4th Cir. 1987); Beisler v. Commissioner, 814 F.2d 1304, 1307 (9th Cir. 1987), affg. T.C. Memo. 1985-25. That is not the case here. The payments received by petitioner under the policy were not predicated upon the type and severity of the injury suffered. Beisler v. Commissioner, supra at 1307; West v. Commissioner, T.C. Memo. 1992-617. Rather, petitioner received benefits under the policy because it was determined that as a result of the stroke suffered, he was permanently and totally disabled. Under the policy, it did not matter as to the underlying reason for the disability. Therefore, *178 such payments may not be excluded from gross income. Rosen v. United States, supra at 510; Gordon v. Commissioner, 88 T.C. 630, 640 (1987). The next issue for decision is whether petitioner is liable for the section 6651(a)(1) addition to tax. Section 6651(a)(1) imposes an addition to tax for failure to timely file a return, unless the taxpayer establishes: (1) The failure did not result from "willful neglect"; and (2) the failure was "due to reasonable cause". "Willful neglect" has been interpreted to mean a conscious, intentional failure, or reckless indifference. United States v. Boyle, 469 U.S. 241, 245-246 (1985). "Reasonable cause" requires the taxpayer to demonstrate that he exercised ordinary business care and prudence and was nonetheless unable to file a return within the prescribed time. United States v. Boyle, supra at 246; sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Reasonable cause may exist where an accountant or other professional advises a taxpayer on a matter of tax law, such as whether a liability exists or whether there is *179 a requirement to file a return. United States v. Boyle, supra at 251. In that case, it is reasonable for the taxpayer to rely on the tax professional because in most instances the taxpayer is not competent to discern that the advice may be erroneous. See Jackson v. Commissioner, 86 T.C. 492, 539 (1986), affd. 864 F.2d 1521 (10th Cir. 1989). Petitioner, a disabled oil worker, was advised by a certified public accountant that his disability payments were nontaxable and, therefore, that he was not required to file a Federal income tax return. Based on the accountant's advice, petitioner did not file for that year and subsequent years. Petitioner had no reason not to rely on the advice, or to suspect that the advice was erroneous. Therefore, under the circumstances, we conclude that petitioner's reliance was reasonable. Accordingly, we do not find that petitioner is liable for the section 6651(a) addition to tax as petitioner's failure to file was due to reasonable cause and not willful neglect. The last issue is whether petitioner is liable for the section 6654(a) addition to tax. Section *180 6654 imposes an addition to tax where payments of the tax, either through withholding or by making quarterly payments during the course of the year, do not equal the percentage of total liability required by the statute. Sec. 6654(a). The section contains no provision relating to reasonable cause or lack of willful neglect by the taxpayer. Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960). The addition to tax under section 6654(a) is mandatory regardless of extenuating circumstance, unless the taxpayer can establish that one of several exceptions listed in section 6654(e) applies. Dodge v. Commissioner, 96 T.C. 172, 183 (1991), affd. in part and revd. in part 981 F.2d 350 (8th Cir. 1992); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Petitioner has not shown that any of the exceptions listed in section 6654(e) apply. Therefore, respondent's determination is sustained. To reflect the foregoing, Decision will be entered for respondent except for the section 6651(a)(1) addition to tax. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner also received Social Security disability benefits and income from the Housing Authority of the Chickasaw Nation (Chickasaw). Due solely to the increase in petitioner's gross income as a result of inclusion of the disability payments, respondent determined that one half of the Social Security payments and the Chickasaw income were taxable.↩
3. Petitioner filed no brief in this case. Petitioner's contentions were stated in his opening statement and in the petition filed with this Court.↩